FILED
John E. Triplett, Acting Clerk
United States District Court

By MGarcia at 9:53 am, Aug 20, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

AHMED KHALIFA,

    Petitioner,

v.

TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:19-cv-103

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Ahmed Khalifa ("Khalifa"), who was formerly incarcerated at D. Ray James Correctional Institution in Folkston, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus.  Doc. 1.  Respondent filed a Motion to Dismiss, and Khalifa filed a Response.  Docs. 5, 8.  For the reasons which follow, I **RECOMMEND** the Court **DENY in part** and **GRANT in part** Respondent's Motion to Dismiss.

### BACKGROUND

Khalifa served a 64-month sentence after his convictions in the District Court for the Southern District of Florida for conspiracy to import a controlled substance and conspiracy to manufacture and possession with intent to manufacture a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 963.  Doc. 1 at 1; Doc. 5-1 at 8.  Khalifa was released from custody on January 13, 2020.  Doc. 1 at 2; https://www.bop.gov/inmateloc/, search for "Ahmed Khalifa," (last visited Aug. 20, 2020).[1]

---

[1] In response to this Court's July 13, 2020 Order, Respondent asserts Khalifa's Petition is not moot based on his release, as he is serving a term of supervised release.  Doc. 13.

As a result of disciplinary proceedings based on a Code 115 charge for destroying or disposing of any item during a search or attempted search, Khalifa was sanctioned with the loss of 41 days' good conduct time and 3 months' loss of phone, commissary, and visitation privileges.  Doc. 1-1 at 1.  Khalifa asserts the imposition of the sanctions violated his procedural due process rights and that the parties involved in imposition of the sanctions lacked the authority to do so.  Khalifa seeks the expungement of his disciplinary violation and the restoration of his 41 days' lost good conduct time.  Doc. 1 at 4.

## DISCUSSION

In his Petition, Khalifa alleges his right to due process was violated in several ways during the course of disciplinary proceedings.  Khalifa asserts the investigator did not inform him of his rights under 28 C.F.R. § 541.5(b)(1) and the Unit Disciplinary Committee ("UDC") failed to render a decision that is consistent with 28 C.F.R § 541.7(e).  Id. at 2.  In addition, Khalifa contends the Disciplinary Hearing Officer ("DHO") did not provide him with all evidence used against him, such as an investigator's memorandum and the note an informant dropped.  Id. at 2–3.  Moreover, Khalifa states the UDC and DHO did not use the appropriate quantum of evidence to determine his guilt.  Id. at 3; Doc. 1-1 at 4.  Finally, he asserts he was improperly sanctioned because the DHO who conducted the hearing and imposed sanctions against him is not BOP staff, as noted in 28 C.F.R. § 541.1 and as defined in § 500.1(b)(1).  Doc. 1 at 3; Doc. 1-1 at 3.

Respondent asserts the DHO's finding of guilt was supported by "some evidence," and due process does not compel the DHO to credit Khalifa's account over the eyewitness accounts of two different prison officials.  Doc. 5 at 1.  Respondent also asserts Khalifa received all due process protections to which he is entitled.  Id.  Respondent also asserts the BOP has the

authority to allow contract facility employees to conduct disciplinary hearings and impose sanctions.  Id. at 7–8.

## I.      Whether the DHO Was Authorized to Impose Sanctions

In his Response to the Motion to Dismiss, Khalifa asserts there is no statutory authority for the BOP to delegate disciplinary processes to non-BOP employees, and §§ 500.1(b)(1) and 541.1 make it clear the DHO must be a BOP employee to impose sanctions.  Doc. 8 at 4.  Because DHO Perry is not a BOP employee, Khalifa maintains he lacked authority to impose sanctions.  Id. at 5.  Khalifa also maintains his sanctions were imposed and in effect a week earlier than the BOP gave its approval of DHO Perry's sanctions.  Id.

The BOP is responsible for "the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(3).  The BOP's authority in this area may include contracting out the care of prisoners to private facilities.  18 U.S.C. § 4013(a)(3).  Additionally, the Regulations governing the BOP's discipline program explain that the program applies to inmates assigned to "any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons."  28 C.F.R. § 541.2; BOP Program Statement 5270.09.  The inmate discipline program "helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts."  28 C.F.R. § 541.1.  "Staff" is defined as "any employee of the Bureau of Prisons or Federal Prison Industries, Inc."  28 C.F.R. § 500.1(b).[2]

D. Ray James is a facility operated "under an agreement with the Bureau of Prisons."  Therefore, the Court must determine whether staff at D. Ray James Correctional Institution, as a

---

[2]      In contrast, an "inmate" is defined as "all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities . . . ."  28 C.F.R. § 500.1(c).

non-federal facility, may nevertheless impose disciplinary sanctions as delegated by the BOP. The Court finds Respondent has not answered this contention.

The Court agrees the BOP's discipline program applies to all federal inmates, including those, like Khalifa, who were housed by a private corporation with a contract with the BOP. Doc. 5 at 8 (citing 28 C.F.R. § 541 (federal regulations pertaining to inmate discipline), and Program Statement 5720.09 (stating that it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with the BOP's rules in order for inmates to live in a safe and orderly environment)).  The Court also recognizes Respondent's reliance on Hilario-Paulino v. Pugh, 194 F. App'x 900 (11th Cir. 2006), in support of his assertion that the process of the contract DHO recommending the loss of good conduct time and a BOP staff member reviewing the recommendation has been upheld by courts, including this Court.  Id.  However, in Hilario-Paulino v. Pugh, the Eleventh Circuit Court of Appeals deferred to the BOP's interpretation of "redelegate" in § 0.97—that it did not delegate its authority to discipline inmates at contract facilities because it retained the authority to review imposed sanctions—and found the interpretation "neither plainly erroneous nor inconsistent with the regulation . . . ."  194 F. App'x at 904.  The Eleventh Circuit noted the BOP's interpretation of § 4042(a) was not unreasonable under Chevron, USA, Inc. v. Natural Resource Defense Council, Inc., 467 U.S. 837, 842–44 (1984), because the BOP can "delegate a portion of its authority to discipline prisoners in privately run institutions to private actors, though reserving for itself the role of final arbiter."  Id. at 903.

While Respondent's interpretation is not unreasonable as to delegation and the disciplinary processes as to contract facilities, his argument in this regard does not address Khalifa's argument that DHO Perry, as a non-BOP staff member, did not have the authority to

4

impose sanctions against Khalifa. While DHO Perry referred to the sanctions as being recommendations, doc. 5-1 at 4, other evidence indicates DHO Perry was the person who imposed these sanctions, id. at 13, and Joy Walters with the BOP's Privatization Management Branch merely certified the sanctions DHO Perry imposed, id. at 18. Additionally, the three-month restriction for commissary, phone, and visitation privileges began on October 1, 2019, yet Ms. Walters did not approve the sanctions until October 3, 2019. Id. at 13, 18; Doc. 8-2 at 2. Again, Respondent does not address the concern that a non-BOP DHO is not "staff" under the Regulations and cannot, therefore, impose sanctions. See Arredondo-Virula v. Adler, 510 F. App'x 581, 582 (9th Cir. 2013) (noting a private contractor was not authorized to discipline an inmate under the version of 28 C.F.R. § 541.10(b)(1) in place at the time and reversing the district court's judgment dismissing the petition); see also Allen v. Young, Case No. 5:18-cv-01463, 2020 WL 2477939, at *7 (S.D. W.Va. Mar. 2, 2020) (observing § 541.10(b)(1) has been repealed, but "the disallowance of [good conduct time] by a contracted DHO remains problematic. . . . Under the revised regulations, . . . 'it appears that any disciplinary sanction must be imposed by a BOP employee.'") (citation omitted); Arellano v. Benov, No. 1:13-cv-00558, 2014 WL 1271530, at *6 (E.D. Cal. Mar. 26, 2014) (finding the reasoning of Arredondo-Virula "persuasive[]" and noting the meaning of "staff" in the regulations "only allows BOP employees to take disciplinary action.").

Thus, I **RECOMMEND** the Court **DENY** this portion of Respondent's Motion to Dismiss. This is not to say Khalifa's claim is meritorious, only that the Court cannot decide the issue based on the record before it. However, the Court addresses Respondent's remaining grounds, as it appears Khalifa's challenge to DHO Perry's authority to impose sanctions as a

5

non-BOP staff member is the only ground which cannot be resolved based on the record before the Court.

## II.     Whether Due Process Requirements Were Met[3]

To determine whether Khalifa's right to due process was violated, the Court must determine what process was owed to Khalifa.  A prisoner has a protected liberty interest in statutory good time credits, and therefore, a prisoner has a constitutional right to procedural due process in the form of a disciplinary hearing before those credits are taken away or denied. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (citing Wolff v. McDonnell, 418 U.S. 539, 555–57 (1974)).  That due process right is satisfied when the inmate: (1) receives advance written notice of the charges against him; (2) is given the opportunity to call witnesses and present documentary evidence; and (3) receives a written statement setting forth the disciplinary board's findings of fact.  Id. (citing Wolff, 418 U.S. at 563–67).  Additionally, the Eleventh Circuit has determined an inmate has the right to attend his disciplinary hearing.  Battle v. Barton, 970 F.2d 779, 782–83 (11th Cir. 1992).  Importantly, an inmate facing disciplinary sanctions is not entitled to the full panoply of rights afforded to criminal defendants.  Id.

Khalifa was charged on September 14, 2019, with destroying or disposing of any item during a search or attempted search, in violation of Code 115.  Doc. 5-1 at 11.  A correctional staff member prepared an incident report, and Khalifa was given a copy of the incident report the same day.  Id.  After the UDC referred the matter, DHO Perry conducted a disciplinary hearing on September 30, 2019.  Id.  Khalifa waived his right to witnesses and did not have documentary

---

[3]     The Court notes Khalifa's assertion the DHO is required to be a BOP staff member.  Doc. 1-1 at 3.  However, the only requirement of a DHO under the Regulations is that the DHO "will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident."  28 C.F.R. § 541.8(d).  DHO Perry's authority to conduct a disciplinary hearing is a different inquiry than whether he has authority to impose sanctions after conducting such a hearing.

6

evidence, but he requested and had staff representation during the hearing. Id. at 11–12. Khalifa acknowledged he received a copy of the incident report at the hearing. Id. at 12. Prior to the hearing, Khalifa was advised of his rights before the DHO on September 20, 2019. Id. at 11, 16. DHO Perry concluded the evidence supported a finding of Khalifa having committed the prohibited act as charged. Id. at 4, 12.

As set forth in the attachments to the parties' pleadings, the record clearly reflects Khalifa received the required due process protections. An incident report was issued on September 14, 2019, and Khalifa received this incident report the same day.[4] Id. at 3, 11; Doc. 1-1 at 8. Khalifa was advised of his rights before the DHO and received a copy of the notice of hearing and his rights on September 20, 2019. Doc. 5-1 at 3, 11, 16. He received a DHO hearing on September 30, 2019, and acknowledged his receipt of the incident report at the hearing. Id. at 4, 12. Khalifa attended the hearing, and his rights were again read and reviewed with him. Khalifa had a staff representative but did not wish to present evidence or witnesses.[5] Doc. 1-1 at 9–10. Following the hearing, DHO Perry detailed his factual and legal conclusions, and Khalifa was provided with the DHO's written report. Id. at 12. Thus, the well-documented evidence

---

[4] The evidence before the Court belies Khalifa's assertion he did not receive notification of his rights before the UDC. The copy of the incident report states Khalifa understood his rights, "as they were read to him." Doc. 5-1 at 21.

[5] Khalifa's assertion that he did not get a copy of all evidence the DHO relied upon, specifically C. Arrington's memorandum and a copy of the note an informant dropped, does not implicate due process protections. Due process affords inmates facing disciplinary proceedings the right to request and present documentary evidence, not the right to view all evidence a DHO uses. O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011); 28 C.F.R. § 541.8(f); see also, R. & R., Gorrell v. Hastings, 2:11-cv-213 (S.D. Ga. Mar. 31, 2014) (The Court was unaware of any "constitutional requirement that [petitioner] was entitled to review of the actual toxicology results . . ., and [petitioner] points to no case law suggesting that such is a constitutional requirement."), ECF No. 56, p. 4. Further, Khalifa implies he has seen both officers' written accounts. Doc. 1-1 at 4 n.3 ("Although its [sic] nearly impossible for two eyewitnesses to recount the same event, here both officers [sic] accounts are directly similar, i.e., plagarise [sic]."). In addition, there is no evidence indicating DHO Perry used a confidential informant as a witness or any evidence from a confidential informant to reach his decision. Doc. 5-1 at 11–12.

unequivocally demonstrates that Khalifa received advance written notice of the charges against him, attended the hearing, was given the opportunity to call witnesses and present documentary evidence, and received a written statement setting forth the DHO's findings of fact.

Additionally, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). Determining whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Smith v. Sec'y, Fla. Dep't of Corr., 432 F. App'x 843, 845 (11th Cir. 2011).[6] "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 456. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Tedesco v. Sec'y for Dep't of Corr., 190 F. App'x 752, 757 (11th Cir. 2006) (internal citation omitted).

The DHO's finding that Khalifa committed the charged offense is supported by "some evidence." However, the Court notes Khalifa correctly states that, where there are conflicting facts, the Regulations require the DHO's decision to be based on the greater weight of the

---

[6] The "some evidence" standard is a requirement of procedural, not substantive, due process. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985) ("We now hold that revocation of good time does not comport with 'the minimum requirements of procedural due process, unless the findings of the prison disciplinary board are supported by some evidence in the record.'") (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)); see also O'Bryant v. Finch, 637 F.3d 1207, 1213 (11th Cir. 2011) (noting in Wolff and Hill "the Supreme Court addressed the requirements of procedural due process in the prison setting.").

evidence.[7]  28 C.F.R. § 541.8(f); Doc. 1-1 at 4.  Indeed, DHO Perry found the "greater weight of evidence" supported a finding Khalifa committed the charged act.  Doc. 5-1 at 4, 13.  In making this finding, DHO Perry considered Khalifa's verbal and written refutations of the charge and the direct observations of Khalifa having committed the prohibited act, as stated in a written report from Lieutenant Durance and a memorandum from Officer Arrington.  Doc. 14-1 at 12–13.

The record before the Court reveals Khalifa received all of the due process protections afforded him during the disciplinary proceedings, and any contention to the contrary is without merit.  Khalifa appears to wish for this Court to re-weigh or to re-examine the evidence and testimony presented at the hearing, see, e.g., doc. 1-1 at 4, but this is not this Court's role.  Smith, 432 F. App'x at 845.  Thus, the Court should **GRANT** these portions of Respondent's Motion.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss.

The Court directs any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the undersigned failed to address any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions herein.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn,

---

[7]  Khalifa argues the UDC's decision to refer the matter to a DHO was not based on some facts or the greater weight of the evidence, if there is conflicting evidence, as required by the Regulations. Doc. 1-1 at 4; 28 C.F.R. § 541.7(e).  Although the UDC did not use specific language about the standard governing its decision, the evidence before the Court demonstrates the UDC's decision was based on some facts and was supported by the greater weight of the evidence.  K. Williams, the chair of the UDC, considered the officer's written statements and Khalifa's statement.  Doc. 5-1 at 20–21.  The relevant Regulation does not require the use of specific language.  § 541.7(e).

9

474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.

**SO REPORTED and RECOMMENDED**, this 20th day of August, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA